IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 10-186 |
| | ) |
| DUANE R. GREEN | ) |

OPINION

DIAMOND, D.J.

On September 16, 2010, defendant Duane R. Green was charged in a two-count indictment with possession with intent to distribute and distribution of 5 grams or more of crack cocaine on or about August 14, 2007 (Count One) and on or about September 6, 2007 (Count Two), each in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(iii). Defendant has filed the following pretrial motions: (1) motion to dismiss for constitutionally infirm grand jury selection (Document No. 35); and (2) motion to compel the government to provide defendant with a statement of uncharged misconduct evidence (Document No. 36). The government has responded to defendant's motions (Document Nos. 46 and 47). For the reasons set forth herein, defendant's motion to dismiss will be denied, and his motion to compel will be granted in part and denied in part.

## I. Defendant's Motion to Dismiss for Constitutionally Infirm Grand Jury Selection (Document No. 35)

Defendant has filed a motion to dismiss the indictment in this case based on the racial composition of the grand jury that indicted him (hereinafter, "defendant's Motion"). Defendant claims that the grand jury selection process used in the Western District of Pennsylvania, which relies on voter registration lists, resulted in the underrepresentation of African Americans on his grand jury. According to defendant, this alleged underrepresentation violated the fair cross section and equal protection requirements embodied in the Fifth Amendment. For reasons explained herein, defendant has failed to establish that his constitutional rights were violated.[1]

### A. Grand Jury Selection Process in the Western District of Pennsylvania

In accordance with the Jury Selection and Service Act ("JSSA"), 28 U.S.C. §1861 et seq.,[2] this judicial district has adopted "The Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors" (the "Plan"), a copy of which is attached to defendant's Motion as Exhibit A. The Plan was approved by a reviewing

---

[1] The court notes that defendant refers in his Motion to the right to equal protection and the right to a grand jury drawn from a fair cross section of the community. See defendant's Motion, ¶¶ 9, 11, 18. However, in discussing the requirements necessary to set forth a *prima facie* case that the grand jury selection procedure violates his constitutional rights, defendant enumerates the three factors relevant to analysis of an equal protection claim, see id., ¶¶12-15, but does not discuss the factors relevant to fair cross section analysis. Nevertheless, by his multiple references to the fair cross section requirement in his Motion, the court assumes defendant intends to make both a fair cross section claim and an equal protection claim, and has analyzed his Motion accordingly.

[2] Pursuant to the JSSA, each federal judicial district must create a plan for the random selection of grand and petit jurors. 28 U.S.C. §1863(a). Such plan must be designed to ensure that grand and petit juries are selected from a fair cross section of the community in the applicable district or division of the district, and that no prospective jurors are excluded from service based on race discrimination. 28 U.S.C. §§1861-1862. The JSSA contemplates that jurors will be selected from the voter registration lists or the lists of actual voters of the political subdivisions within the district or division, but other sources of names in addition to voter lists may be used where necessary to foster the policy and protect the rights secured under the JSSA. 28 U.S.C. §1863(b)(2).

2

AO 72
(Rev. 8/82)

panel consisting of members of the Judicial Council of the Third Circuit, as noted in the order attached to the Plan. See defendant's Motion, Ex. A. The Plan applies to all three divisions of the Western District of Pennsylvania, which are Pittsburgh, Erie and Johnstown. Plan, §3. The Pittsburgh Division, which is at issue in this case, consists of Allegheny, Armstrong, Beaver, Butler, Clarion, Fayette, Greene, Indiana, Jefferson, Lawrence, Mercer, Washington and Westmoreland counties. Id.

The Plan provides that "names of grand and petit jurors selected to serve . . . shall be selected at random from the voter registration lists of all the counties within the relevant divisions" because "[v]oter registration lists represent a fair cross section of the community in each division of the Western District of Pennsylvania." Plan, §5. Voter registration lists are obtained electronically from the Statewide Uniform Registry of Electors ("SURE")[3] through the Department of State. Id.

The Plan explains that names of prospective jurors are to be drawn randomly from voter registration records for all counties within the particular divisions of the district and placed on a master jury wheel. Plan, §5. Names from the master jury wheel then are drawn randomly as necessary to fill the qualified jury wheel. Id., §9. Names from the qualified wheel are drawn randomly as necessary to select individuals to be summoned for service on grand and petit juries. Id., §13.

The Plan identifies the following qualifications for jury service: United States citizenship;

---

[3]SURE is "a single, uniform integrated computer system" created by the Pennsylvania legislature which "[c]ontain[s] a database of all registered electors in this Commonwealth" and is designed to "[e]nsure the integrity and accuracy of all registration records in the system by prohibiting unauthorized entry, modification or deletion of registration records." 25 Pa.C.S. §§1222(c)(1), (2).

3

eighteen years of age; residence within the judicial district for one year; ability to read, write and understand English; mental and physical capability to render satisfactory jury service; and no criminal charge pending or conviction of a crime punishable by imprisonment for more than one year, absent restoration of civil rights. Plan, §10. The Plan prohibits discriminating against potential grand or petit jurors "on account of race, color, religion, sex, national origin or economic status." Id., §2.

In September 2010, defendant was indicted by a grand jury sitting in the Pittsburgh Division of this district that had been empaneled pursuant to the provisions of the Plan. As stated, defendant was charged with two counts of possession with intent to distribute and distribution of crack cocaine. Defendant argues the indictment should be dismissed because African-Americans were purposely excluded from serving on grand juries in the Pittsburgh Division, in violation of his constitutional right to equal protection of the law. See defendant's Motion, ¶16 (arguing that defendant's "grand jury was a grand jury from which [African-Americans] purposely have been excluded"). Defendant further contends that the Plan's reliance on voter registration lists guaranteed that his grand jury did not represent a cross section of the Western District of Pennsylvania in violation of the fair cross section requirement of the Fifth Amendment. See id., ¶¶17 (stating the Plan's reliance on the SURE system "amounts to a deliberate interference-irrespective of [the Plan's] purpose - with a random jury selection and offends the constitutionally grounded principle that any grand jury be drawn from a cross-section of the community"). Neither of defendant's argument have merit.

### B. Defendant has failed to establish either a *prima facie* violation of the fair cross section requirement or a valid equal protection violation claim

The Fifth Amendment guarantees an accused the right to an indictment returned by a grand

4

jury. U.S. Const. amend. V. This Fifth Amendment protection includes the right to be indicted by a grand jury that constitutes a fair cross section of the community from which it is drawn.[4] See United States v. Frumento, 409 F.Supp. 136, 141 (E.D. Pa. 1976), aff'd, 563 F.2d 1083 (3d Cir. 1977) (the Fifth Amendment "has been held to require that no group in the community be excluded unjustly from grand jury service and that a grand jury panel shall constitute a fair cross-section of the judicial district from which it is chosen."). Although the fair cross section requirement does not provide a right to any particular jury composition or ratio, "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Taylor v. Louisiana, 419 U.S. 522, 538 (1975).

Race-related discrimination in the selection of grand jurors is unacceptable because it "strikes at the fundamental values of our judicial system and our society as a whole." Rose v. Mitchell, 443 U.S. 545, 556 (1979). Thus, the concept of equal protection under the law[5] prohibits "racial discrimination in the procedures used to select the venire from which individual jurors are drawn." Ramseur v. Beyer, 983 F.2d 1215, 1230 (3d Cir. 1992), quoting, Batson v. Kentucky, 476 U.S. 79, 85 (1986).

---

[4] "The principles that apply to the systematic exclusion of potential jurors on the ground of race are essentially the same for grand juries and for petit juries." Alexander v. Louisiana, 405 U.S. 625, 626 n.3 (1972). The Sixth Amendment applies the fair cross section requirement to petit juries. See Duren v. Missouri, 439 U.S. 357, 364 (1979). Thus, Sixth Amendment fair cross section cases are relevant to the analysis in this case.

[5] Although the Fifth Amendment does not specifically reference equal protection, the Supreme Court has interpreted it to include an equal protection element. See Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

5

The requirements a defendant must meet when challenging the grand jury selection process as being discriminatory based on race are comparable, although not identical, under fair cross section and equal protection analysis. See Ramseur, 983 F.2d at 1230. In this case, defendant has failed to establish the necessary elements to succeed on either a fair cross section claim or an equal protection claim.

1. **Fair cross section claim**

Defendant has not established that he was denied the right to be indicted by a grand jury that represents a fair cross section of the community. To establish a *prima facie* violation of the fair cross section requirement, a defendant must show that: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979). It is defendant's burden to establish these three elements, and only then does the burden shift to the government to justify its jury selection procedure. Id. at 368.

Here, defendant satisfies the first Duren prong because African-Americans have been found to be a distinct group. See United States v. Weaver, 267 F.3d 231, 240 (3d Cir. 2001); Ramseur, 983 F.2d at 1230 (stating "African-Americans are unquestionably a constitutionally cognizable group"). Defendant's fair cross section claim fails, however, because he has not established that he meets the second and third prongs of Duren.

Defendant has not established that the representation of African-Americans on grand juries in the Pittsburgh Division is not fair and reasonable in relation to the number of such persons in

6

the community (the second Duren prong), or that African Americans are systematically excluded from serving on grand juries in the Pittsburgh Division (the third Duren prong). In analyzing whether these Duren requirements are satisfied, the Third Circuit has instructed that we should consider factors such as "the nature of the process by which jury lists are composed, the length of time of underrepresenation, and the strength of the evidence that purports to establish an 'unfair and unreasonable' representation. . . ." Ramseur, 983 F.2d at 1235. The Third Circuit subsequently clarified that the strength of the evidence should be considered under the second prong, and the nature of the process and the length of time of underrepresentation should be considered under the third. Weaver, 267 F.3d at 241.

In this case, there is no evidence to establish that the representation of African-Americans on grand juries in the Pittsburgh Division is unfair or unreasonable in relation to the number of such persons in the community. In an attempt to satisfy this requirement, defendant has cited census statistics identifying the percentage of African-Americans constituting the population of each county that comprises the Pittsburgh Division. See defendant's Motion, ¶7. Defendant also attached to his Motion a document entitled, "Pennsylvania Votes: Civic Engagement in the Keystone State, 2002-2006" authored by Benjamin Spears (the "Spears Report"). Defendant cites the Spears Report for the proposition that "although African-Americans made up 9% of the voter-eligible population of Pennsylvania, they made up only 7% of the total registered voters." Id., ¶6. Defendant then alleges, upon information and belief, that the grand jury that returned the indictment against him did not include any African-Americans. Id., ¶8. Finally, defendant asserts that "[d]espite African-American populations between 0.2% and 12.6% in the counties in the Pittsburgh Division, the grand jury failed to include a single African-American." Id., ¶22.

7

The information cited by defendant is insufficient to satisfy the second <u>Duren</u> prong. Defendant has not conducted any studies or presented any relevant statistical evidence to establish that the representation of African-Americans on grand juries in the Pittsburgh Division was unfair or unreasonable in relation to the number of such persons in the community. See <u>Weaver</u>, 267 F.3d at 240 (stating that the <u>Duren</u> requirement asking whether the representation of the group in jury venires is fair and reasonable in relation to the number of such persons in the community "is, at least in part, a mathematical exercise, and must be supported by statistical evidence"). Indeed, the information presented by defendant does not establish the percentage of African-Americans in the entire Pittsburgh Division, nor does it establish the percentage of African-Americans in the jury wheel, or include statistical evidence establishing the alleged disparity between African-Americans in the Pittsburgh Division versus the jury pool. See <u>Weaver</u>, 267 F.3d at 240-41. Moreover, defendant's reliance on the Spears Report, which purports to provide statistics regarding the percentages of eligible and registered voters in the *entire* state of Pennsylvania from 2002-2006 broken down by race, is irrelevant to the analysis of whether the representation of African-Americans on grand juries *in the Pittsburgh Division* was unfair or unreasonable in relation to the number of such persons in the community. In sum, defendant has failed to present statistical evidence sufficient to satisfy the second <u>Duren</u> prong.

Finally, defendant has failed to establish the third <u>Duren</u> prong, that the alleged underrepresentation of African-Americans on grand juries in the Pittsburgh Division is due to systematic exclusion. "Under <u>Duren</u>, 'systematic exclusion' can be shown by a large discrepancy repeated over time such that the system must be said to bring about the underrepresentation." <u>Weaver</u>, 267 F.2d at 244.

AO 72
(Rev. 8/82)

Here, defendant has produced no evidence showing that African-Americans are systematically excluded from serving on grand juries in the Pittsburgh Division, let alone on a recurring basis. Rather, defendant broadly alleges that African-Americans are systematically excluded as a result of the Plan's reliance on voter registration lists obtained from the SURE system. He further claims that systematic exclusion must exist because no African-Americans served on the grand jury that indicted him.

Defendant's unsubstantiated assertion of systematic exclusion based on his claim that there were no African-Americans on his grand jury is insufficient to establish the third prong under Duren. In United States v. Diaz, 1993 WL 85764 (E.D. Pa. Mar. 25, 1993), the defendant challenged the make-up of the jury panel solely on the observation that there were no Hispanics on the panel that was drawn from a population containing Hispanics. Absent any additional statistical analysis, the Diaz court found that the defendant's sole observation failed to establish systematic exclusion as required by Duren. Id. at *8; see also United States v. Guy, 924 F.2d 702, 706 (7th Cir. 1991) (holding that the defendant's mere observation that there were no African-Americans on panel that was drawn from population containing African-Americans was not sufficient to demonstrate any systematic exclusion). More recently, the Third Circuit held in United States v. Rickard, 336 Fed. Appx. 235 (3d Cir. 2009), that the defendant's observation of one African-American among the pool of 43 potential jurors "is not evidence of systematic exclusion. At best, it is evidence that an underrepresentation has occurred once, but it does not shed any light on its cause - for example, an inherent deficiency in the jury selection process, or pure chance." Id. at 242 n.6. Likewise here, defendant's allegation, on information and belief, that no African-Americans served on the grand jury that indicted him fails to demonstrate that African

American are systematically excluded from grand jury service in the Pittsburgh Division, let alone on a recurring basis.

For the foregoing reasons, defendant has failed to establish the second and third prongs of Duren, thus he is unable to make out a *prima facie* violation of the fair cross section requirement.

## 2. **Equal Protection claim**

Defendant likewise is unable to succeed on his equal protection claim. In order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant "must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." Castaneda v. Partida, 430 U.S. 482, 494 (1977). To make that showing, defendant must establish the following: (1) the group is one that is a recognizable, distinct class, which is singled out for different treatment under the laws; (2) the group was subject to substantial underrepresentation over a significant period of time; and (3) the procedure used to select the jurors is "susceptible of abuse or is not racially neutral." Id.; see also Ramseur, 983 F.2d at 1230-31.

As discussed above, defendant meets the first requirement because African-Americans have been found to be a distinct group, see Weaver, 267 F.3d at 240; Ramseur, 983 F.2d at 1230, but he has not satisfied the other two requirements necessary to establish an equal protection violation.

As to the second requirement, defendant has not established that African-Americans have been substantially underrepresented on grand juries in the Pittsburgh Division over a significant period of time. Indeed, defendant has not produced any statistical evidence to permit analysis of whether a non-random disparity exists, such as evidence of absolute disparity, comparative disparity and deviation from the expected random selection. See Ramseur, 983 F.2d at 1231.

10

℁AO 72
(Rev. 8/82)

Further, defendant has not conducted any studies of his own to determine whether substantial underrepresentation of African-Americans on grand juries in the Pittsburgh Division occurred over a significant time period. See Ramseur, 983 F.2d at 1233 (finding that the brief duration and limited sample size of the survey conducted by the defendant in that case did not establish substantial underrepresenation of African-Americans over a significant period of time). Rather, defendant only has asserted that there were no African-Americans on his own grand jury, a factor which is insufficient to establish a constitutional violation. Quite simply, defendant has not come close to producing the type of statistical evidence that demonstrates African-Americans have been substantially underrepresented on grand juries in the Pittsburgh Division over a significant period of time.

Defendant also has failed to establish the third requirement of an equal protection violation, that is, the procedure used to select the jurors is "susceptible of abuse or is not racially neutral." See Castaneda, 430 U.S. at 494. In Ramseur, the United States Court of Appeals for the Third Circuit held that the use of voter registration and Department of Motor Vehicle lists to create the jury venire is a facially neutral practice with respect to race and "allow[s] no opportunity for subjective or racially motivated judgments." 983 F.2d at 1233. Likewise, here, the Plan provides a racially neutral mechanism for the selection of grand and petit jurors because those individuals are selected at random from voter registration lists obtained through the SURE system. Thus, defendant has failed to establish that the Plan's procedure used to select grand jurors is susceptible of abuse or is not racially neutral, and his equal protection claim fails.

For reasons explained herein, defendant has not established that his constitutional rights were violated, and his motion to dismiss the indictment will be denied.

AO 72
(Rev. 8/82)

## II. Motion to Compel the Government to Provide Defendant With a Statement of Uncharged Misconduct Evidence (Document No. 36)

Defendant has filed a motion pursuant to Federal Rule of Evidence 404(b) and Rule 609 to disclose uncharged misconduct evidence that the government intends to offer at trial.

Rule 404(b) requires the government to provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs or acts for the purposes enumerated in the rule. It provides "that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." According to the commentary to Rule 404(b), other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes reasonable notice will depend on the circumstances of each case.[6]

In response to defendant's motion, the government provided a list of six categories of Rule 404(b) evidence it intends to offer at trial during its case-in-chief. See Document No. 47. The government's response demonstrates that it has complied with Rule 404(b)'s notice requirement. However, to the extent the government decides to introduce any additional Rule 404(b) evidence, it shall provide defendant the required notice ten days before trial.

Defendant also cites Federal Rule of Evidence 609 in his motion. Rule 609(a)(1) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the

---

[6]Courts that have considered what constitutes "reasonable notice" have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (ten days).

12

AO 72
(Rev. 8/82)

prejudicial effect to the accused. Rule 609(a)(2) further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of the punishment. The only notice requirement in Rule 609 is that the government must provide "sufficient advance written notice" of its intent to use evidence of a conviction more than ten years old. Fed.R.Evid. 609(b). Therefore, to the extent defendant seeks immediate notice of the government's intent to use evidence under Rule 609, that request will be denied.

### III. Conclusion

For the foregoing reasons, defendant's motion to dismiss will be denied, and his motion to compel will be granted in part and denied in part as stated herein.

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: October 6, 2011

cc: Ross E. Lenhardt
Rebecca Ross Haywood
Assistant U.S. Attorneys

W. Penn Hackney
Assistant Federal Public Defender

13